**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John B. LEVY, Vincent F. Franzone,
Marvin Poole, and Earl W.
Moriarity, Defendants-Appellants.**

No. 85–3703.

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1986.

Russell Schonekas, Frank G. DeSalvo, New Orleans, La., for defendants-appellants.

Donald L. Foret, New Orleans, La., for Marvin Poole.

Curtis Collier, Asst. U.S. Atty., John P. Volz, U.S. Atty., Harry W. McSherry, Jr., New Orleans, La., for plaintiff-appellee.

Before WISDOM, RUBIN and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents questions concerning the double jeopardy and collateral estoppel effects of an acquittal on a conspiracy count and related substantive counts. The defendants, John Levy and Vincent Franzone, were previously acquitted by a jury on five counts of misapplication of bank funds, one count of making false statements in connection with certain bank loans, and one count of conspiracy to commit these offenses. They now argue that the instant prosecution on conspiracy and substantive counts concerning related bank transactions are barred under the doctrines of double jeopardy and collateral estoppel. We agree that the conspiracy charged in the present indictment is part of the same conspiracy involved in the matter in which the defendants were acquitted. Therefore, double jeopardy prevents the government from prosecuting them on the conspiracy charge. The substantive counts in the instant case, however, are discrete and distinct from the charges involved in the previous case. Therefore, neither double jeopardy nor collateral estoppel precludes the

government from prosecuting the defendants on these counts.

## FACTS

On July 26, 1984, a federal grand jury returned an indictment against the defendants, John Levy and Vincent Franzone, and against another individual, George Oubre. Levy and Oubre were both partners in the law firm, Levy, Oubre, Lenz, and Rosenthal. Franzone was the president and chief executive officer of the First Progressive Bank. The indictment concerned loans made to Oubre by three banks in the New Orleans area, Gulf South Bank, the National Bank of Commerce in Jefferson Parish, and the First Progressive Bank. The Federal Deposit Insurance Corporation insured all three banks.

The indictment charged Levy, Franzone, and Oubre with five counts of misapplication of funds in connection with loans by First Progressive Bank to Oubre totalling approximately $60,000,[1] and with one count of making a false statement in connection with a $125,000 loan to Oubre by Gulf South Bank.[2] The indictment charged Oubre alone with two counts of making a false statement in connection with two $25,000 loans from the National Bank of Commerce in Jefferson Parish.[3] Finally, the indictment charged that Levy, Franzone, Oubre, and other persons known and unknown to the grand jury had conspired to commit these substantive offenses.[4] All the acts charged as substantive offenses in the indictment, as well as the making of certain payments on Oubre's loans at the First Progressive Bank by Levy and Franzone, were alleged as overt acts in furtherance of this conspiracy. This indictment was sent to Section "A" of the District Court for the Eastern District of Louisiana. We shall refer to it as the "A" indictment.

While the "A" indictment was pending, the indictment in this case was returned by the federal grand jury. This indictment was returned on June 15, 1984, and was superseded on November 29, 1984. This indictment was sent to Section "K", and we shall refer to it as the "K" indictment.

The "K" indictment charges Levy, Franzone, Earl Moriarty, Marvin Poole, and other persons known and unknown to the grand jury with one conspiracy: to defraud the United States of America and the Federal Deposit Insurance Corporation and to make false statements to the federally insured First Progressive Bank.[5] The indictment also includes several substantive counts. The "K" indictment charges Levy with two counts and Franzone with three counts of making a false statement to the Federal Deposit Insurance Corporation, an agency of the United States.[6] Finally, the indictment charges Franzone with perjury in connection with testimony he gave before the grand jury.[7]

While the "K" case was pending, the "A" case went to a jury trial. The jury found Levy and Franzone not guilty on all counts. Oubre had previously pleaded guilty.

Following the not guilty verdict, Levy and Franzone filed a motion to dismiss the "K" indictment on grounds of double jeopardy and collateral estoppel. The government argued, however, that the conspiracy and substantive charges in the two indictments were completely different and did not arise from the same acts or transactions.

According to the government, the "K" conspiracy involved a plan to concentrate the credit of the First Progressive Bank in Levy. Under this plan, Franzone would use his influence as president of that bank

---

1. 18 U.S.C. § 656.

2. 18 U.S.C. § 1014.

3. *Id.*

4. 18 U.S.C. § 371.

5. *Id.*

6. 18 U.S.C. § 1001.

7. 18 U.S.C. § 1623. The "K" indictment also charged Marvin Poole with one count of making a false statement to the First Progressive Bank in violation of 18 U.S.C. § 1014. This count is irrelevant for purposes of this appeal.

to ensure that First Progressive would lend money to nominal borrowers and Levy-controlled companies for the use and benefit of Levy. The danger created by such a concentration was a loss of diversification; if Levy became unable to pay off the loans, the bank would likely fail. By not making the loans directly to Levy, the parties could conceal the scheme from the Federal Deposit Insurance Corporation, which insured a large portion of the deposits in the First Progressive Bank. In this way, the Federal Deposit Insurance Corporation was prevented from properly fulfilling its duty to inspect the bank for such an impropriety and from protecting its own interest. If funds were needed to cover principal or interest payments on these loans, Levy would, either personally or through another individual or entity, secure an additional loan from either First Progressive or another bank.

The "A" conspiracy, on the other hand, was allegedly a smaller conspiracy that centered around Oubre. According to the government, in this conspiracy, Oubre, Levy, and Franzone agreed to obtain loans, fraudulently, from Gulf South Bank, First Progressive Bank, and the National Bank of Commerce in Jefferson Parish by making false statements as to matters such as the ability of the borrower, usually Oubre, to repay. When the loans became due, the three would, either directly or indirectly, obtain new loans to pay off the old. The district court accepted the government's characterization of the two conspiracies as separate and distinct and concluded that neither double jeopardy nor collateral estoppel precluded the government from prosecuting the defendants Levy and Franzone for the conspiracy count or the substantive counts charged in the "K" indictment. The defendants now bring this appeal.[8]

## DISCUSSION

### I. Double Jeopardy

Levy and Franzone first contend that the "K" indictment subjects them to double jeopardy in violation of the Fifth Amendment.[9] The double jeopardy clause guarantees that the government, "with all its resources and power [will] not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continuing state of anxiety and insecurity...."[10] Specifically, the prohibition against double jeopardy provides three categories of protection:

It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.[11]

In this case, Levy and Franzone seek protection under the first category.

■ To support a claim of double jeopardy, the defendants must show that the two offenses charged are the same offense.[12] The defendants must first make out a prima facie nonfrivolous double jeopardy claim. If they succeed, the government must then prove by a preponderance of the

---

**8.** The defendants raised the issue on a pretrial motion to dismiss the indictment. The district court dismissed the motion. Technically the court's order of dismissal is not a final order. An appeal from that denial is proper, however. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *United States v. Henry,* 661 F.2d 894, 896 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 992, 102 S.Ct. 1614, 71 L.Ed.2d 853 (1982).

**9.** U.S. Const. amend V (" ... nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb....").

**10.** *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957).

**11.** *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969) (footnotes omitted), *quoted in Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977).

**12.** *Henry,* 661 F.2d at 896; *United States v. Marable,* 578 F.2d 151, 153 (5th Cir.1978).

evidence that separate offenses are charged.[13]

### A. Conspiracy Count

■ Turning first to the conspiracy count charged in the "K" indictment, the central inquiry in a double jeopardy claim involving conspiracies is whether one or more than one agreement exists. As the Supreme Court stated in *Braverman v. United States:*[14]

> [W]hen a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.[15]

Because of the clandestine nature of conspiracy, discerning the scope of an alleged conspiratorial agreement is a difficult and imprecise task for a reviewing court. The problems inherent in such an undertaking are even more pronounced when, as here, the defendants have denied the existence of any wrongdoing from the beginning and have previously been acquitted by a jury of the first alleged conspiracy. They contend that if any conspiratorial agreement ever existed, it was broad enough to encompass the alleged wrongdoings charged in both indictments. The district court ruled that the defendants had established a prima facie nonfrivolous double jeopardy as to the conspiracy charge and that it was up to the government to overcome that proof.[16] The district court concluded, however, that the government had established by a preponderance of the evidence that the defendants had entered into not one but two conspiratorial agreements. We now review that conclusion.

To aid a court in assessing whether the alleged conspirators entered into a single agreement or multiple agreements, this circuit in *United States v. Marable*[17] enunciated a number of factors for the court to consider in reviewing the entire record: "(1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place".[18]

### 1. Time

■ Turning first to the time factor, the "A" indictment alleges a conspiracy beginning "prior to January 1, 1981 and continuously thereafter up to and including [July 26, 1984]".[19] The "K" indictment alleges a conspiracy beginning "prior to January 1, 1982, and continuously thereafter up to and including November 30, 1983".[20] The time

**13.** *United States v. Stricklin,* 591 F.2d 1112, 1117–18 (5th Cir.) *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979); *United States v. Nichols,* 741 F.2d 767, 770–71 (5th Cir.1984), *cert. denied,* 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985). To meet its burden, "the government is not compelled to come forward with any particular *kind* of evidence". *Stricklin,* 591 F.2d at 1119 (emphasis added).

**14.** 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942).

**15.** *Id.* at 53, 63 S.Ct. at 101–02, 87 L.Ed. at 28.

**16.** *Stricklin,* 591 F.2d at 1117–18. The government acknowledges that the district court stated

in a hearing on the double jeopardy motion that the defendants had established a prima facie claim as to the conspiracy charged in the "K" indictment. The government argues, however, that the district court later reversed itself on this issue. Our review of the record has found no direct action to that effect by the district court.

**17.** 578 F.2d 151 (5th Cir.1978).

**18.** *Id.* at 154.

**19.** Indictment, No. 84–24, at 2.

**20.** Indictment, No. 84–229, at 2–3.

period of the "A" indictment is inclusive of that alleged in the "K" indictment, although all of the overt acts alleged in the "A" indictment occurred during the time of the "K" conspiracy.

### 2. Personnel

Levy and Franzone were the central characters in the activities in both indictments. The "A" indictment alleged a conspiracy by Levy, Franzone, Oubre, and others known and unknown to the grand jury. The proof at trial showed that although Oubre performed a significant number of the acts alleged in the "A" indictment, his overall role was subsidiary to that of Levy and Franzone. At trial, the government indicated that Bud Moriarty was also a member of that conspiracy. The government left to the jury the question whether Marvin Poole and others were also involved in the "A" conspiracy.

The "K" indictment alleged a conspiracy by Levy, Franzone, Poole, Moriarty, and others known and unknown to the grand jury. Oubre was originally indicted as a member of that conspiracy, but his name was dropped in a superseding indictment after he entered into a plea bargain in the "A" indictment.

The overlap in personnel is striking. The government contends however, that there were 10 or 15 other unindicted co-conspirators involved in the "K" conspiracy. From this, the government argues that any finding in favor of the defendants on the personnel factor would be misplaced. We disagree. When the central characters in both indictments are the same, that the activities in the "K" indictment involve more people than the "A" indictment proves little. Indeed, such a set of circumstances is consistent with a finding of only one agreement when, as here, it appears that the government has attempted to carve out a portion of a larger conspiracy and allege it as a separate conspiracy. Moreover, "[a] mere shuffling of personnel

in an otherwise ongoing operation with an apparent continuity will not, alone, suffice to create multiple conspiracies".[21]

### 3. Statutory offenses

Both indictments broadly allege conspiracies to violate 18 U.S.C. § 371. The "A" indictment specifically alleges a conspiracy to make false statements and to misapply funds, in violation of 18 U.S.C. §§ 1014 and 656. The "K" indictment alleges a conspiracy to make false statements and to defraud the United States of America and the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. §§ 371 and 1014. The overlap in statutory offenses is significant, and even the statutes that do not overlap are related.

### 4. Acts

The overt acts alleged in the "A" indictment all involved Oubre. Most concerned Oubre's actions concerning loans he received. The "K" indictment alleges overt acts involving loans from the First Progressive Bank either directly or indirectly to or for Levy. That indictment also alleges false statements by Levy and Franzone. No overt act in the "K" indictment specifically mentions Oubre or the Oubre loans.

The disparity between the overt acts would, at first blush, indicate the existence of two conspiracies. In assessing a motion to dismiss on double jeopardy grounds, however, a court must look not only at the acts alleged in the two indictments, but also at the acts admitted into evidence at the trial or at any hearing.[22] The court must review the entire record and take a commonsense approach in determining the substance of each alleged conspiracy.

At the "A" trial, the government introduced evidence concerning virtually all the overt acts charged in the "K" indictment. Specifically, the government attempted to prove that Levy had either directly or indirectly obtained a large number of loans

---

21. *Nichols,* 741 F.2d at 772.

22. *United States v. Kalish,* 690 F.2d 1144, 1151–52 (5th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983).

from the First Progressive Bank in such a manner that it would not be obvious to a Federal Deposit Insurance Corporation bank examiner or to other parties that such a large portion of the bank's funds had been lent to him.

The government asserts that it introduced this evidence not as direct proof of the actual conspiracy, but rather under Federal Rule of Evidence 404 to show motive.[23] The government contends that although certain of the Oubre transactions were undertaken to cover payments on Levy-related loans and to hide First Progressive Bank's concentration of credit in Levy, there were separate agreements and therefore separate conspiracies. We agree with the government that the Oubre transactions and those alleged in the present indictment are related. We believe that this relationship raises an inference that only one agreement existed. Indeed, the record reveals that the acts involved in both alleged conspiracies are the same, tending to prove a single agreement rather than multiple agreements.[24]

### 5. Place

The conspiracies alleged in both indictments occurred in Louisiana's Jefferson Parish, and both involve two of the same banks, the First Progressive Bank, and the National Bank of Commerce in Jefferson Parish.

The government need not disprove each of the *Marable* factors to carry its burden and establish the existence of separate conspiracies.[25] In this case, however, the government has failed to disprove any of those factors. The times, personnel, statutory offenses, acts, and places all coincide or overlap in such a way as to show a single conspiratorial agreement. If a conspiracy existed, it was broad enough to include both alleged conspiracies. The record reveals one conspiracy under which Levy and Franzone agreed to concentrate the credit of Franzone's bank, the First Progressive Bank, in loans directly or indirectly to Levy. Individuals such as Oubre, Moriarty, and Poole, along with others, were used as decoys. Franzone made loans through the First Progressive Bank to these individuals for the use and benefit of Levy. Levy then used these funds for his own purposes. The borrowers did not intend and often had no means to pay the loans when they matured. Levy and Franzone therefore made the interest and principal payments on these loans. To cover these payments, Levy either directly or indirectly borrowed funds from other banks. Again, Levy frequently used decoys such as Oubre to obtain these loans. In this way, the other banks would not realize what was taking place. Franzone used his considerable influence as president and chief executive officer of the First Progressive Bank to aid Levy and others in obtaining such loans from other banks. The idea behind the scheme was always to stay "one step ahead of the sheriff". When the Federal Deposit Insurance Corporation began to examine the books of the First Progressive Bank, Levy and Franzone attempted to conceal many of the Levy-related loans at the First Progressive Bank with loans from other institutions. Finally, when the Federal Deposit Insurance Corporation began asking questions concerning the loans at First Progressive Bank and elsewhere, Levy and Franzone fabricated answers in an effort to cover their tracks.[26]

---

**23.** F.R.Evid. 404(b) provides that evidence of other crimes may be admissible "as proof of motive".

**24.** *See generally Kalish,* 690 F.2d 1144.

**25.** *United States v. Tammaro,* 636 F.2d 100, 104 (5th Cir.1981).

**26.** The government, at one point, argued that a separate conspiracy existed to cover up the first conspiracy. The government has, however, offered no concrete evidence of any such *separate* agreement. Indeed, the conspiracy alleged in each indictment has elements of both the offense and the coverup. Moreover, due to its nature—a scheme of fraud—this is the type of conspiracy in which the conspirators often agree either explicitly or implicitly to take measures to coverup.

In the light of the *Marable* factors, the government failed to prove the existence of separate agreements. Instead, there existed one overriding conspiracy. Levy and Franzone were the central characters and other members floated into and out of the conspiracy. The Oubre transactions were, like other transactions, part of a larger plan. The broader conspiracy, which included the Oubre transactions, had "an essential continuity of personnel, a consistency in method, an identical base of operation, and a singleness of unwaivering purpose".[27] "While the scope of a conspiracy is rarely clear-cut, we must conclude that the evidence in the record tends to show ... a single, continuing conspiracy...."[28] The district court therefore erred in denying the motion to dismiss the conspiracy charge of the indictment as to Levy and Franzone on double jeopardy grounds.[29]

### B. Substantive Counts

Levy and Franzone also contend that the substantive counts charged in the "K" indictment are barred on double jeopardy grounds. As to this contention, a review of the record compels a holding for the government.

■ Under the double jeopardy doctrine a previous prosecution on a conspiracy charge does not preclude the government from prosecuting a defendant for the substantive counts that were the object of that conspiracy.[30] "[T]he offenses of conspiracy to commit a crime and the crime itself are separate offenses";[31] therefore, prosecution for the former does not bar subsequent prosecution for the latter on double jeopardy grounds.

■ In assessing double jeopardy as to substantive charges, we rely on the traditional "same evidence" test announced in *Blockburger v. United States.*[32] Under this test, the crucial question is whether " 'each [offense] requires proof of a fact that the other does not' ".[33] Using this test, the district court found that Levy and Franzone had failed to establish a nonfrivolous prima facie double jeopardy as to the substantive offenses.

■ The substantive counts two through six [34] set forth in the "A" indictment charged Levy, Franzone, and Oubre with willfully and knowingly misapplying monies entrusted to the First Progressive Bank with intent to injure and defraud the First Progressive Bank on five separate occasions in violation of 18 U.S.C. § 656. Count seven of that indictment charged the three with willfully and knowingly making a false material statement to Gulf South Bank for the purpose of influencing the actions of that bank in violation of 18

---

**27.** *Nichols,* 741 F.2d at 772.

**28.** *Kalish,* 690 F.2d at 1152.

**29.** If the government believed that these "two" conspiracies were related, it should have joined them. On the facts, the government was aware of the distinct possibility that these "two" conspiracies were related.

 The government suggests that, because both indictments were pending at the same time, the defendants should have moved to join them. We note, however, that a defendant has no such duty and does not waive his right to assert a double jeopardy claim if he does not move to join. "To require a defendant facing two conspiracy indictments to make the initial motion to consolidate because there is only one conspiracy is to require him to inform the government

that it misapprehends the facts." *Kalish,* 690 F.2d at 1153.

**30.** *United States v. Ballard,* 586 F.2d 1060, 1064 (5th Cir.1978); *United States v. Kalish,* 734 F.2d 194, 197–99 (5th Cir.1984), *cert. denied,* 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 321 (1985); *Nichols,* 741 F.2d at 772–73.

**31.** *Nichols,* 741 F.2d at 773.

**32.** 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932); *see Kalish,* 734 F.2d at 196–97.

**33.** *Kalish,* 734 F.2d at 197 (quoting *Iannelli v. United States,* 420 U.S. 770 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616, 625 n. 17 (1975)).

**34.** Count one of the "A" indictment was the conspiracy count.

U.S.C. § 1014.[35] Counts two through seven all involved loans obtained by Oubre.

Counts three and four of the "K" indictment[36] charge Levy with willfully and knowingly making a false statement as to material facts within the jurisdiction of the Federal Deposit Insurance Corporation in violation of 18 U.S.C. § 1001. Similarly, counts five through seven charge Franzone with violations of 18 U.S.C. § 1001. Finally, count eight charges Franzone with perjury before the grand jury in violation of 18 U.S.C. § 1623.

Analysis under any variation of the "same evidence" test reveals a complete failure on the part of the defendants to establish a prima facie double jeopardy claim. The substantive offenses charged under each indictment involve completely different statutory violations that require proof of different facts. Additionally, the offenses charged under each indictment involve completely different transactions. All substantive counts charged in the "A" indictment concern loans to Oubre. With the possible exception of count eight, no substantive count of the "K" indictment in any way involves those loans. As explained below, even if count eight of the "K" indictment does concern an Oubre loan involved in the "A" indictment, double jeopardy is not appropriate because each charge, count seven of the "A" indictment and count eight of "K" indictment, requires proof of a fact not necessary for a conviction under the other. The district court therefore did not err in denying the defendants' motion to dismiss the substantive counts charged in the "K" indictment on double jeopardy grounds.

## II. Collateral Estoppel

Levy and Franzone contend that even if the government is not precluded from prosecuting them for the substantive counts of the "K" indictment on double jeopardy grounds, the doctrine of collateral estoppel precludes that prosecution. We disagree.

Collateral estoppel is one aspect of the protection afforded by the double jeopardy clause.[37] Collateral estoppel requires "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since [1916]."[38] The doctrine prevents relitigation of both evidentiary and ultimate facts.[39]

Collateral estoppel, however, bars relitigation only of those facts necessarily determined in the first trial. "When a 'fact is not *necessarily* determined in a former trial, the possibility that it may have been does not prevent re-examination of that issue.'"[40] In assessing a collateral estoppel claim, a two-step inquiry is therefore required. The court must first determine what facts were necessarily decided in the first trial.[41] In making such a determina-

---

35. The "A" indictment also included two substantive counts against Oubre alone that were later dropped. These substantive counts have no double jeopardy or collateral estoppel effect.

36. Count one of the "K" indictment is the conspiracy count. Count two of the "K" indictment charges Poole with willfully and knowingly making a false material statement to the First Progressive Bank for the purpose of influencing the actions of that bank in violation of 18 U.S.C. § 1014. Poole was not placed in jeopardy during the "A" trial; he therefore has no double jeopardy claim. Count two is therefore irrelevant for purposes of this appeal.

37. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *United States v. Price,* 750 F.2d 363, 365 (5th Cir.) *cert. denied,* —— U.S. ——, 105 S.Ct. 3526, 87 L.Ed.2d 651 (1985).

38. *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475.

39. *Wingate v. Wainwright,* 464 F.2d 209, 213–14 (5th Cir.1972); *United States v. Lee,* 622 F.2d 787, 789 (5th Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981).

40. *Lee,* 622 F.2d at 790 (emphasis in original), quoting *Adams v. United States,* 287 F.2d 701, 705 (5th Cir.1961).

41. A defendant asserting collateral estoppel must attempt to define precisely the factual issues necessarily decided in the previous trial. *Kalish,* 690 F.2d at 1155. The district court noted that Levy and Franzone had failed to comply with this requirement. Opinion, No. 84–229 "K", at 6 (E.D.La., Oct. 31, 1985). Al-

tion the court must use "realism and rationality",[42] and "[w]hen dealing with an acquittal by general verdict, 'this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter....'"[43] After deciding which facts were necessarily determined in the prior proceeding, the court must then assess whether the government is attempting to relitigate those facts in the second proceeding.

Before applying these principles to the facts at hand, we note that "[i]n principle, the law of collateral estoppel is clear, in application, it can be a slippery concept indeed".[44]

### A. Acquittal on substantive counts

 Turning first to the facts necessarily determined by the jury when it acquitted Levy and Franzone of the substantive counts in the "A" indictment, it is clear that the government is not attempting to relitigate any of those facts in the subsequent prosecution. As noted, the substantive counts in the "A" indictment all involve loans to Oubre. No substantive count in the "K" indictment, with the possible exception of the perjury count, involves those loans; the issues are discrete, and no fact necessarily decided in the previous prosecution on the substantive counts is at issue here.

though we tend to agree with the district court's assessment, we examine those facts that the defendants have defined with enough sufficiency to allow us to assess the merit of their claim.

**42.** *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475; *United States v. De La Torre,* 639 F.2d 245, 248 (5th Cir. Unit A 1981).

**43.** *Henry,* 661 F.2d at 897 (quoting *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475).

**44.** *United States v. Mock,* 604 F.2d 341, 343 (5th Cir.1979).

**45.** If the jury necessarily made such a determination, then the government would be collaterally estopped from presenting evidence on that point in the "K" trial. The jury may, how-

 Although collateral estoppel may preclude the introduction of certain evidence possibly relating to the perjury count, it does not prohibit altogether the government from prosecuting that count. Count seven of "A" indictment charged Levy and Franzone with knowingly making a false material statement to the Gulf South Bank. The indictment alleged that Franzone had knowingly misrepresented to officials of Gulf South Bank that the First Progressive Bank would "take out"—or in other words, purchase—a certain loan from Gulf South Bank to Oubre. The jury in the "A" case acquitted Levy and Franzone of this count. Count eight of the "K" indictment charges Levy with perjury before the grand jury. One alleged instance of perjury in that count concerns Franzone's statements to the grand jury that he never represented that First Progressive Bank would take out a loan from Gulf South Bank. Franzone now argues that to acquit him on count seven of the "A" indictment, the jury must have believed that he never made any such representation, and therefore, the government is collaterally estopped from prosecuting him on the perjury count.

Franzone's argument fails for several reasons. First, even assuming that the "A" jury necessarily decided that Franzone never made any such representation concerning the Oubre loan,[45] the jury did not decide whether Franzone made such a representation as to loans to other parties.

ever, have decided that although Franzone made the representation to Gulf South Bank, he did not know it was false at the time. We need not decide what was the basis for the jury's verdict as to count seven, however, because that issue is not properly before us on this *Abney* appeal. *See United States v. Mock,* 604 F.2d 336 (5th Cir.1979) (appellate court reviewing denial of motion to dismiss on collateral estoppel grounds may not review whether evidence relating to the subsequent charge is inadmissible due to collateral estoppel; rather, the reviewing court may only assess whether the government is collaterally estopped from bringing the prosecution altogether). We remand the issue to the district court so that it may decide whether the jury necessarily decided that Franzone never made such a representation to Gulf South Bank as to the Oubre loan.

The government has, from the outset, contended that Franzone agreed to take out Gulf South Bank loans not only to Oubre but also to Billy Lyons and Charles Keenan. If Franzone did agree to take out the loans of Lyons and Keenan, his statement before the grand jury was perjurious. Moreover, Franzone's alleged perjury is not limited to his statement regarding agreements to take out loans. Although the government may be collaterally estopped from presenting evidence concerning Franzone's alleged agreement to take out a Gulf South Bank loan to Oubre, collateral estoppel does not bar the prosecution on the perjury count altogether.

The acquittals on the substantive counts in the "A" indictment do not raise a collateral estoppel bar to prosecution for the substantive counts in the "K" indictment.

### B. Acquittal on conspiracy count

Levy and Franzone point out that in the "A" trial on what the government viewed as the smaller conspiracy between Levy, Franzone, Oubre, and others, the government introduced a great deal of evidence concerning the broader conspiracy. From this, Levy and Franzone argue that by acquitting them of the conspiracy count alleged in the "A" indictment the jury was finding that no conspiracy of any type existed between Levy, Franzone, and others. They contend that to reach such a decision the jury necessarily decided that Levy and Franzone did not commit the acts charged as substantive counts in the "K" indictment. According to Levy and Franzone, collateral estoppel therefore bars prosecution on the substantive offenses.

We disagree with Levy and Franzone's premise that the jury necessarily decided that Levy and Franzone were involved in no conspiracy of any type. Therefore, we need not assess the merits of the defend-ants' conclusion that if the jury acquitted of them of involvement in any conspiracy, then the government is collaterally estopped from its present prosecution on the substantive charges.[46]

It is true that at the "A" trial, the government presented evidence of a broader conspiracy. But the government introduced this evidence in an effort to show motive, in other words to show why Levy, Franzone, and Oubre would have entered into a conspiracy and committed the offenses alleged. From the outset, the government's theory was that two conspiracies existed. Any confusion as to scope of the conspiracy for which the government was prosecuting Levy and Franzone in the "A" trial was cleared up by the court's instruction and by the indictment, which the court repeated in its instruction. In its instruction to the jury, the court made clear that the government was charging Levy and Franzone with conspiracy to commit the substantive offenses in the "A" indictment. All of those substantive offenses involved loans to Oubre. Moreover, the court informed the jury that to find the defendants guilty of the conspiracy, the jury had to find that one of the overt acts had been completed. All of the overt acts also involved Oubre loans. The jury therefore could have acquitted Levy and Franzone of the "A" conspiracy charge simply because the members of the jury did not believe that Levy and Franzone had engaged in any conspiracy or wrongdoing with respect to the Oubre loans.[47]

It is true that the jury may also have believed that Levy and Franzone engaged in no wrongdoing whatsoever; that is, however, irrelevant. That question was not before the jury and they therefore did not necessarily decide that issue. Indeed, the jury may have believed that Levy and Franzone were involved in a separate con-

---

**46.** We note, however, that "[g]enerally, it is true that a defendant may be acquitted of conspiracy without collaterally estopping the government from later presenting the evidence necessary to convict him of the substantive crime which was the object of the conspiracy". *Mock*, 604 F.2d at 344.

**47.** Indeed, the jury might have been swayed toward such a conclusion by the testimony of Oubre. Even after he had agreed to plead guilty, Oubre testified in the "A" trial that he believed that he had done nothing wrong.

spiracy and still acquitted them. All that the jury necessarily decided was that Levy and Franzone were not involved in a conspiracy related to the Oubre loans. As noted, Levy and Franzone's conduct regarding the Oubre loans is not implicated in the substantive offenses charged in the "K" indictment. In its prosecution of Levy and Franzone for the substantive offenses, the government need not relitigate any facts necessarily determined in the previous conspiracy prosecution. Collateral estoppel does not bar the government from prosecuting Levy and Franzone for the substantive offenses charged in the "K" indictment.[48]

## CONCLUSION

Because the government failed to establish separate agreements by a preponderance of the evidence, we reverse the judgment of the district court insofar as it denied the motion of Levy and Franzone to dismiss on double jeopardy grounds the conspiracy count charged in the "K" indictment. In all other respects, the district court's judgment is affirmed. Collateral estoppel does not prevent the government from prosecuting Levy and Franzone for the substantive offenses charged in the "K" indictment.

**48.** *Cf. Kalish,* 690 F.2d 1144. In *Kalish,* the defendant was acquitted on conspiracy charges in the first trial. Subsequently, he was charged with a separate conspiracy and with substantive offenses related to that conspiracy. This court ruled that there was in reality only one conspiracy and therefore, the subsequent conspiracy prosecution was barred by double jeopardy. Nonetheless, neither collateral estoppel nor double jeopardy barred the government from proceeding with its prosecution on the substantive offenses related to what the government believed was a second conspiracy.