**UNITED STATES of America,**

v.

**Alberto MONCIVAIS, Joel "Jewel" Villegas, Henry Caine.**

**No. CRIM. NO. L–00–1333–S.**

United States District Court,
S.D. Texas,
Laredo Division.

Nov. 2, 2001.

Jose Angel Moreno, Office of U.S. Attorney, Houston, TX, Pretrial Services—LA, Laredo, TX, U.S. Probation, Laredo, TX, Financial Litigation, U.S. Attorney's Office, Southern District of Texas, Houston, TX, James Mack Noble, IV, U.S. Attorney's Office, Laredo, TX, for U.S.

Ricardo De Anda, Laredo, TX, Federal Public Defender, Laredo, TX, for Henry Caine.

## MEMORANDUM AND ORDER

KAZEN, Chief Judge.

Pending is Defendant HENRY CAINE's Motion to Dismiss Indictment under Double Jeopardy and Collateral Estoppel, and in the Alternative to Suppress Evidence, filed on September 24, 2001. (Docket No. 103). The Government responded to the motion on October 19, 2001. (Docket No. 112). Caine filed a Traverse to that response on October 26, 2001. (Docket No. 113).

### I. Statement of Facts

On December 3, 1998, a tractor trailer with approximately 1,220 pounds of marijuana was apprehended by Texas law enforcement authorities while traveling from Texas to Memphis, Tennessee. The driver and occupant of the tractor trailer agreed to cooperate with the authorities by delivering the marijuana as planned, thereby leading the authorities to other individuals involved in the scheme. When the marijuana was delivered in Memphis, six individuals were arrested at the scene: Roderick Kelley, Joel Villegas, Hilberto Fernandez, David Soto, Rolando Lopez, Jr., and Gilberto Garcia. Kelley's role was as purchaser of the marijuana, Villegas was the seller, and the other four suspects were the "loaders," who transferred the marijuana from the tractor trailer to a van owned by Kelley. Although both the van and the marijuana were recovered by the authorities, the driver of the van, alleged to be Henry Caine (Defendant), escaped from the scene without arrest.

Defendant was charged along with those arrested in Memphis. All six defendants who were arrested at the scene on December 3, 1998 pled guilty. Defendant pled not guilty, and was tried by a jury on June 11, 1999. The charges against Defendant were: 1) conspiracy to possess with intent to distribute and to distribute approximately 1,221 pounds of marijuana; 2) attempt to possess with intent to distribute approximately 1,221 pounds of marijuana; and 3) possessing with intent to distribute a separate 425 pound quantity of marijuana that was discovered in the search of a residence shortly after the arrests of December 3. Defendant was acquitted of all of the above charges on June 13, 1999.

Currently pending against Defendant in the Southern District of Texas are charges of conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana, and conspiracy to launder monetary instruments. (Docket No. 15, Counts 1, 5).

## II. *Discussion*

### A. *Double Jeopardy*

 The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This prohibition protects against a second prosecution for the same offense after acquittal. *See United States v. Levy*, 803 F.2d 1390, 1393 (5th Cir.1986); *United States v. Nichols*, 741 F.2d 767, 771 (5th Cir.1984). The Supreme Court announced the standard for determining whether two offenses are the same for double jeopardy purposes in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The general inquiry is whether each of the charged offenses requires proof of an element that the other does not. *See United States v. Delgado*, 256 F.3d 264, 272 (5th Cir.2001); *United States v. Sharpe*, 193 F.3d 852, 863 (5th Cir.1999). The defendant bears the initial burden of presenting a prima facie non-frivolous double jeopardy claim. If he succeeds, the burden shifts to the government to prove that the indictments charge separate crimes. *See Delgado*, 256 F.3d at 270; *United States v. Cruce*, 21 F.3d 70, 74 (5th Cir.1994). Where the indictments in question involve charges of conspiracy, the court "must determine whether the conduct described in the multiple indictments . . . constituted a single conspiracy or multiple, seriatim conspiracies." *Nichols*, 741 F.2d at 771.

### 1. *Defendant's Initial Burden*

"The defendant can establish a *prima facie* non-frivolous double jeopardy claim through indictments or other documentation to establish the earlier charges, or even through his own testimony." *United States v. Ellender*, 947 F.2d 748, 759 (5th Cir.1991). Defendant has produced the transcript from his trial in the Western District of Tennessee. (Docket No. 104). Contained in the transcript is the indictment, as read to the jury by the trial judge. (Tr. 20–22). There is sufficient overlap between that indictment and the indictment that is currently pending (Docket No. 15) to establish a prima facie non-frivolous double jeopardy claim.

### 2. *Government's Burden to Prove Multiple Conspiracies*

 In the context of successive conspiracy prosecutions, once the defendant has made a prima facie double jeopardy showing, *Blockburger* bars the conspiracy count of the second indictment "unless the government can prove by a preponderance of the evidence that the two conspiracies are factually distinct. . . ." *United States v. Deshaw*, 974 F.2d 667, 673 (5th Cir.1992). In other words, the Government must establish that the indictments involve separate conspiracies. *See Nichols*, 741 F.2d at 771. This determination is governed by

five factors: "1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offense charged that indicates the nature and scope of the activity that the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place." *Id.* (citing *United States v. Marable,* 578 F.2d 151, 154 (5th Cir.1978)). No single factor is dispositive. Rather, all five factors must be considered in combination. *See id.* Relying on *Blockburger,* the Government argues that the *Marable* test is employed only where the two indictments being considered involve violations of the same conspiracy statute. However, the Fifth Circuit recently clarified that in conspiracy cases, the essential issue, even under *Blockburger,* is "whether one, or more than one, agreement existed." *See id.* at 272. Moreover, the Government's contention would render the third factor of the analysis superfluous, because the test would not be used unless the statutory offenses charged were identical.

In *United States v. Nichols,* the court concluded that the defendant's prior conspiracy conviction barred his subsequent prosecution on similar conspiracy charges. *See Nichols,* 741 F.2d at 768–69. *Nichols* involved the smuggling of cocaine from Colombia into the United States. *See id.* at 769. Two conspirators organized an ongoing scheme under which a plane would fly from the United States to Colombia, load cocaine, refuel in Belize, and then return to a remote part of Louisiana. *See id.* The defendant, Billie Joe Nichols, was the pilot for three such operations, and the intended pilot for an aborted fourth operation. *See id.* at 769–70.

The Government obtained four indictments against Nichols, each relating to a single operation within the overall scheme. *See id.* at 770. For his participation in the planning of the fourth operation, Nichols was convicted of conspiracy to import cocaine and conspiracy to possess with intent to distribute cocaine. *See id.* Nichols then argued that double jeopardy barred his prosecution for the conspiracy counts of the remaining indictments, which pertained to the earlier operations. *See id.* After identifying the controlling issue to be whether the conduct described in the four indictments constituted a single conspiracy, or multiple conspiracies, the court then employed the five-factor *Marable* test. *See id.* at 771.

The court concluded that the first factor, time, pointed to the existence of a single conspiracy because Nichols' three flights occurred only weeks apart, and as each trip began, the next was being planned. *See id.* Moreover, the original plan was to create an ongoing operation that was intended to continue indefinitely. *See id.* With regard to personnel, the court found that although not all of the players were the same in each operation, the central characters were the same, thereby weighing in favor of a single conspiracy. *See id.* at 771–72. The third factor also favored a single conspiracy, because the statutes on which Nichols was convicted were the same ones under which he was charged in the pending indictments. *See id.* at 772. In analyzing the fourth factor, the acts charged and proved at trial, the court noted that the Government had introduced evidence of all four operations at Nichols' trial, and concluded that this fact tended to prove the existence of only one conspiracy. *See id.* Finally, with regard to places, the geography was identical in all four indictments. *See id.* Upon consideration of all of the factors, the court determined that Nichols participated in one conspiracy to commit multiple violations of the drug laws, and therefore held that double jeopardy prohibited his prosecution on the con-

spiracy charges of the remaining indictments. *See id.* at 772–73.

In *United States v. Levy,* the defendants had been indicted for conspiracy to defraud the United States and the Federal Deposit Insurance Corporation, and to make false statements to a federally insured bank (FPB). *See* 803 F.2d 1390, 1392 (5th Cir.1986). While that indictment was pending, the defendants were acquitted on charges of conspiracy to misapply funds in connection with loans by FPB, and conspiracy to make a false statement in connection with a loan from a different bank. *See id.* Following their acquittal, the defendants filed a motion to dismiss the pending indictment on grounds of double jeopardy and collateral estoppel. *See id.* As in *Nichols,* the court analyzed the motion under the five-factor *Marable* test. *See id.* at 1394.

With regard to the first factor, the time periods involved in the two indictments overlapped. *See id.* at 1394–95. Under the second factor, the court rejected the Government's argument that because the personnel involved in the two indictments were not identical, there must have been multiple conspiracies. *See id.* at 1395. Instead, the court found it sufficient that the "central characters" were consistent. *See id.* Although the indictments did not charge violations of the same statutes, there was a significant overlap in the statutory offenses that were charged. *See id.* With regard to the fourth factor, the court noted that the two indictments did not allege the same overt acts. *See id.* "In assessing a motion to dismiss on double jeopardy grounds, however, a court must look not only at the acts alleged in the two indictments, but also at *the acts admitted into evidence at the trial* or at any hearing." *Id.* (emphasis added). Because the Government at the concluded trial had introduced evidence concerning nearly all of the overt acts alleged in the still pending

indictment, and the transactions alleged in the two indictments were *related,* this factor weighed in favor of a single agreement. *See id.* at 1396. Finally, the conspiracies alleged in both indictments involved the same geographic location, and some of the same specific places within that location. *See id.* Based on the foregoing analysis, the court concluded that all five factors favored the existence of a single conspiracy. *See id.* Accordingly, double jeopardy barred the prosecution of the defendants on the conspiracy charges of the second indictment. *See id.* at 1397.

## B. *The Instant Case*

The Government concedes that Count One of the pending indictment is barred by double jeopardy. Accordingly, the Court limits its analysis to Count Five, the money laundering count.

### 1. *Time*

The indictment from the Western District of Tennessee (Tennessee indictment) alleged a conspiracy "[b]eginning at a time unknown to the Grand Jury, but at least on or about December 3, 1998, ...." (Docket No. 112, Exh. A). Count Five of the indictment from the Southern District of Texas (pending indictment) alleges a conspiracy "[f]rom on or about October 1, 1998 and continuing up to and through December 1998, ...." (Docket No. 15). There is a clear overlap in the time periods of the two indictments. Additionally, the overt acts in the pending indictment refer specifically to a shipment of approximately 1,200 pounds of marijuana on December 3, 1998. Thus, similar to *Levy,* this overlap between the time periods of the two indictments causes this factor to weigh in favor of a single agreement.

### 2. *Personnel*

The people listed as co-conspirators in the Tennessee indictment were Defendant, Roderick Kelley, Joel Villegas, David An-

gel Soto, Gilberto Garcia, Hilberto Fernandez, and Rolando Lopez, Jr. (Docket No. 112, Exh. A). The pending indictment names Alberto Moncivais, Joel Villegas, and Defendant in Count Five, and includes Roderick Kelley in the overt acts. (Docket No. 15). The evidence in the Tennessee trial demonstrated that the main players in the conspiracy were Kelley, Defendant, and the Texas sellers, who included Villegas. Although not all of the same names from the Tennessee indictment appear in the pending indictment, the central characters are the same: Defendant, Villegas, and Kelley. The only difference appears to be that at the time of the Tennessee trial, the Government was not aware that Alberto Moncivais was participating with Villegas as one of the suppliers in the conspiracy. It is clear from the stipulated factual basis for Moncivais' recent guilty plea that he participated in the events surrounding the Tennessee trial. (Docket No. 110). With the central characters in both indictments being the same, the fact that there are fewer parties named in this indictment does not weigh in favor of multiple agreements. *See Levy,* 803 F.2d at 1395. As the court stated in *Nichols,* "[a] mere shuffling of personnel in an otherwise on-going operation with an apparent continuity will not, alone, suffice to create multiple conspiracies." *Nichols,* 741 F.2d at 772.

### 3. *Statutory Offenses*

The Tennessee indictment alleged a conspiracy to violate 21 U.S.C. § 846. (Docket No. 112, Exh. A). Count Five of the pending indictment charges a conspiracy to violate 18 U.S.C. § 1956. (Docket No. 15). However, it is clear from the alleged overt acts of the pending indictment that this count is intertwined with the drug conspiracy. The alleged money laundering involved Defendant and his co-conspirators taking the money gained from the sale of previous shipments of marijuana, and using it to purchase future shipments. In

*Levy,* the court concluded that this factor weighed in favor of a single conspiracy because "[t]he overlap in statutory offenses is significant, and even the statutes that do not overlap *are related." Levy,* 803 F.2d at 1395 (emphasis added).

### 4. *Acts Charged or Otherwise Alleged*

"In assessing a motion to dismiss on double jeopardy grounds, ... a court must look not only at the acts alleged in the two indictments, *but also at the acts admitted into evidence at the trial or at any hearing." Levy,* 803 F.2d at 1395 (emphasis added); *see also Deshaw,* 974 F.2d at 674. This fourth factor encompasses any description of the offense charged that indicates the nature and scope of the activity that the Government sought to punish in each case. *See Delgado,* 256 F.3d at 272. During its prosecution of Defendant on the Tennessee indictment, the Government introduced evidence through the testimony of Roderick Kelley that Defendant agreed to be Kelley's partner in the marijuana distribution business in October of 1997. (Tr. 145). Kelley testified that this partnership operated on a continuous basis from October of 1997 until the arrest in Memphis on December 3, 1998. (Tr. 145, 156). The operation involved weekly shipments, and Defendant was paid by Kelley on a weekly basis. (Tr. 156). The Government also offered testimony from numerous witnesses about large sums of money belonging to Kelley and Defendant that police officers found on various occasions. (Tr. 166–67, 193–94, 207–14, 222). The above evidence was in addition to developing in detail the events of December 3, 1998. (Tr. 161–67). Providing insight into the scope of the activity that was placed before the jury in the trial on the Tennessee indictment, the Government ended its closing by stating, "Mr. Cain (sic) was *a long-term participant* in this drug conspiracy, and he's responsible for

the charges in this case." (Tr. 288) (emphasis added).

The overt acts alleged in the pending indictment include Joel Villegas' traveling from Laredo, Texas to Memphis, Tennessee on two occasions in November of 1998 to deliver large amounts of marijuana to Roderick Kelley and Defendant in exchange for large cash payments. (Docket No. 15). After both deliveries, Villegas transported the money back to Laredo. Additionally, this section of the indictment refers to a transaction on December 3, 1998, in which approximately 1,200 pounds of marijuana were transported from Laredo to Memphis, and were delivered to Kelley. At that time, Kelley was holding $63,000 in cash that was to be used to pay for the marijuana. Under the heading "Manner and Means," the pending indictment alleges that "the defendants arranged for others ... to transport illegal proceeds and drug profits earned from the distribution of bulk quantities of marijuana to the defendants and others involved in the conspiracy ... from Memphis, Tennessee and other localities within the United States, to locations in Laredo, Texas." (Docket No. 15).

In both *Nichols* and *Levy*, the Government had offered evidence in the first trial of a broad scope of events encompassed by the time periods involved in the two indictments. The court concluded in both cases that this fact tended to prove the existence of a single conspiracy, and therefore barred the Government from prosecuting the defendants on the subsequent conspiracy charges. *See Levy*, 803 F.2d at 1396; *Nichols*, 741 F.2d at 772. The Government's approach in the instant case follows this same pattern. In the trial on the Tennessee indictment, the Government offered evidence of a conspiracy that would swallow up the conspiracy alleged in Count Five of the pending indictment.

### 5. *Places*

There is no significant difference between the geographic locations involved in the two indictments. Both of the indictments concern events that commenced in Laredo, Texas and ended in Memphis, Tennessee.

In light of the above five factors, the Government has failed to carry its burden of proving the existence of multiple agreements. Although there is no overlap between the statutory offenses charged in the relevant counts of the two indictments, those offenses are related, and the other four factors coincide or overlap in such a way as to evidence a single conspiratorial agreement. Because Defendant was previously acquitted on conspiracy charges involving the same conspiracy that is now alleged, the pending prosecution is barred by double jeopardy.

### *CONCLUSION*

For the aforementioned reasons, Defendant's motion to dismiss the indictment is **GRANTED.**