**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Melvin MARABLE, Defendant-Appellant.**

**No. 77–5412.**

United States Court of Appeals, Fifth Circuit.

Aug. 14, 1978.

David B. Byrne, Jr., Montgomery, Ala., Herbert Shafer, Atlanta, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., Robert A. Boas, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE, COLEMAN *, and CLARK, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The defendant Melvin Marable appeals his conviction after trial to a jury for conspiring to possess cocaine with intent to distribute it, in violation of 21 U.S.C.A. § 846, and to distribute it, in violation of 21 U.S.C.A. § 841(a)(1). This court recently affirmed an earlier conviction of Marable for conspiracy to possess and to distribute heroin. *United States v. Marable,* 574 F.2d 224 (5th Cir. 1978). On the present appeal Marable contends that the government arbitrarily has carved a single conspiracy to deal in narcotics into separate heroin and cocaine conspiracies in violation of his fifth amendment right against twice being placed in jeopardy for the same offense. We agree and reverse.

The government's proof in the heroin conspiracy trial established that Clarence Cole and Marable arranged sales of heroin for their cocaine customer, Detective Johnny Turner, who—unknown to them—was

---

* Judge Coleman did not participate in the consideration or decision of this case. Pursuant to 28 U.S.C. § 46(d), the case is decided by a quorum of this court.

an undercover DEA Agent. Co-defendant Cole, who pled guilty, and Detective Turner testified against Marable in both trials. The government presented to the jury portions of Marable's own testimony from the heroin conspiracy trial in the trial on the cocaine conspiracy charge. During July 1976, conspiratorial negotiations involving cocaine and heroin went on simultaneously. The major events proven in Marable's trial on the heroin conspiracy charge which we discussed in our earlier opinion affirming that conviction, 574 F.2d at 224, were also central to the government's proof against Marable in the trial on the cocaine conspiracy charge.

 To support a claim of double jeopardy, a defendant must show that the two offenses charged are in law and fact the same offense. The test most often used in resolving the question of identity of offenses in double jeopardy analysis is whether proof of the matter set out in a second indictment is admissible as evidence under the first indictment and, if it is, whether a conviction could have been properly sustained on such evidence. *See, e. g., Morgan v. Devine,* 237 U.S. 632, 640, 35 S.Ct. 712, 714, 59 L.Ed. 1153, 1156 (1919); *Gavieres v. United States,* 220 U.S. 338, 343, 31 S.Ct. 421, 422, 55 L.Ed. 489, 490 (1911); *Bacom v. Sullivan,* 200 F.2d 70, 71 (5th Cir. 1952), *cert. denied,* 345 U.S. 910, 73 S.Ct. 651, 97 L.Ed. 1345 (1953). Testing whether two alleged conspiracies are in fact the same calls upon us to make an inquiry into the record more detailed than that required with respect to other offenses under the "same evidence" test, *cf. United States v. Ruigomez,* 576 F.2d 1149, No. 77–5391 (5th Cir., 1978), because, by the nature of the crime, the precise bounds of a single conspiracy seldom will be clear from the indictment alone. The gist of the crime of conspiracy and the characteristic which defines its breadth is the unlawful agreement. As the Supreme Court stated in *Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 101–02, 87 L.Ed. 23, 28 (1942),

when a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

Thus, to determine whether the government can prosecute a defendant for more than one conspiracy, we must determine whether there was more than one agreement.

 In conspiracy cases, proof of the illegal agreement or common purpose is not always clear and frequently may depend on inferences from circumstantial evidence. *United States v. Becker,* 569 F.2d 951 (5th Cir., 1978). Applying the usual "same evidence" test in such situations could allow many separate prosecutions in all but the most limited and precise short-term conspiracies. The majority of conspiracies will involve agreements to undertake a series of actions. To allow one or two of these acts to serve as the basis for several separate prosecutions would enable the construction of multiple conspiracy prosecutions from a single agreement contrary to the principle in *Braverman* that under a single conspiracy statute only one offense of conspiracy can occur from a single agreement.

Prosecutions under 21 U.S.C.A. § 846, the general drug conspiracy statute charged in the case at bar and in Marable's earlier heroin conspiracy trial, present an even greater need for defining the bounds of a conspiracy from an examination of the record than do prosecutions under the general criminal conspiracy statute, 18 U.S.C.A. § 371. While 18 U.S.C.A. § 371 requires proof of an overt act in furtherance of a conspiracy to support a conviction, we have held that because the language of 21 U.S. C.A. § 846 and its sister statute, 21 U.S.C.A. § 963 (conspiracy to import), does not refer

to an overt act, the government need not allege and prove an overt act to sustain a conviction. *United States v. Thomas,* 567 F.2d 638, 641 (5th Cir. 1978). *Cf. United States v. Johnson,* 575 F.2d 1347 (5th Cir., 1978). An indictment is sufficient if it charges the offense in the words of the statute, *Grene v. United States,* 360 F.2d 585, 586 (5th Cir.), *cert. denied,* 385 U.S. 978, 87 S.Ct. 522, 17 L.Ed.2d 449 (1966); therefore, a Section 846 indictment is sufficient if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege or prove any specific overt act in furtherance of the conspiracy. *United States v. Bermudez,* 526 F.2d 89, 94 (2d Cir. 1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). Thus, because a Section 846 indictment may be tightly drawn, the court must look to the record to determine whether constituent elements of the two conspiracies charged indicate that the government has twice placed the defendant in jeopardy.

We seek to determine whether the evidence in the case now on appeal and in the case leading to Marable's earlier conviction describes a single agreement to deal broadly in drugs or whether it describes two conspiracies, one to deal in cocaine, the other to deal in heroin, sufficiently discrete that separate prosecution does not violate the Double Jeopardy Clause. Our examination of the record focuses upon these elements: (1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place. *Cf. Arnold v. United States,* 336 F.2d 347 (9th Cir. 1964), *cert. denied,* 380 U.S. 982, 85 S.Ct. 1348, 14 L.Ed. 275 (1965); *Short v. United States,* 91 F.2d 614 (4th Cir. 1937). Obviously, the existence of

the same events as crucial parts of the proof of conspiracy in each case cuts across each of these factors and tends to show the existence of a single agreement.

■ The time periods during which each conspiracy allegedly took place are very nearly the same. According to the indictments, the conspiracy with which Marable was charged in his first trial began on or about July 14, 1976, and continued until on or about August 20, 1976. The indictment which resulted in the conviction now on appeal states the period of the conspiracy as "from on or about July 12, 1976, and continuing thereafter until on or about July 29, 1976."

The cocaine conspiracy trial used essentially the same cast of characters as did the heroin conspiracy trial. With the exception of Jerry Craig, who supplied the cocaine that Cole and Marable sold through Nora Bell, all those who were alleged to have participated in the cocaine conspiracy were significantly involved in the events proven as part of the heroin conspiracy. This identity of actors playing their parts in the same frame of time wove the plot of the heroin negotiations into the cocaine negotiations.

In both indictments, the government charged violations of the same statutes: the general narcotics conspiracy provisions of 21 U.S.C.A. § 846 and the substantive statute, 21 U.S.C.A. § 841(a)(1), which proscribes distribution of a controlled substance. As in *Braverman,* the government has charged Marable with multiple violations of a single conspiracy statute; but, unlike *Braverman,* in the case at bar, the underlying statute violated is the same for both charges. The only distinction between the underlying statutory provisions in two conspiracies for which Marable has been convicted lies in the identity of the controlled substance named in the indictment: heroin in the first prosecution and cocaine in the case now before us.[1]

---

1. The statutes upon which prosecution rests distinguish this case from situations in which the defendant asserts a double jeopardy claim

where the government has charged conspiracies under separate special conspiracy statutes. The Double Jeopardy Clause imposes few lim-

Because this case proceeded under Section 846, it was not mandatory that the indictment charge an overt act. In the indictments in the case at bar and in the earlier heroin conspiracy conviction, the government did allege overt acts as it would have been required to do if the case were proceeding under Section 371. Although the charged overt acts are superfluous, they do serve to describe the offense charged. Therefore, we may examine them for the additional insight they provide into the nature and scope of the allegedly separate illicit agreements which the government seeks to punish. *Cf. United States v. Ruigomez*, 576 F.2d 1149 (5th Cir., 1978). Here, the similarities in the descriptions of the conspiracy charged in each indictment support the existence of a single conspiracy described in two ways rather than the existence of two separate offenses. The heroin indictment charges six overt acts; the cocaine indictment, seven. A single overt act is common to both indictments: the July 14, 1976, meeting between Marable and Cole and two government undercover officers, Turner and DEA Agent Sergeant Wood. The remaining overt acts charged in each indictment were different but the government offered proof of two of them in the record of both cases. The first overt act alleged in the cocaine conspiracy indictment—the July 12, 1976, meeting of Cole and Marable with Turner at the Waffle House in Clayton County, Georgia—was also part of the government's case against Marable in the heroin conspiracy trial. The second act alleged in the heroin conspiracy indictment—Marable's July 22, 1976, telephone conversation with Turner in which Marable discussed both cocaine and "brown stuff," or Mexican heroin—also was part of the government's proof in the cocaine conspiracy trial.

The relationship between the overt acts charged in each indictment and the crucial events of each conspiracy which also were important in the other becomes particularly significant when viewed in light of the composite narrative that results from drawing together the major events proven by the government in each case. Except for Cole's testimony that he contacted heroin "foot soldier" Horace Jones about Turner's request to buy heroin, the only discussions about heroin took place at meetings whose chief purpose was to negotiate cocaine purchases. As the government accurately observed during the heroin conspiracy trial, the evidence of the July heroin negotiations is inextricably intertwined with evidence of a conspiracy to distribute cocaine. Evidence at the heroin trial showed that after simultaneous negotiations for purchases of heroin and cocaine, Marable and Cole sought to get Turner cocaine through Bell at the same time that they sought to find a source to supply him with heroin. In each trial the government's proof began chronologically with the July 12 contact between conspirators Cole and Marable and Detective Turner at the Mark Inn in Fulton County, Georgia, and the subsequent meeting at the Waffle House Restaurant. According to the government's proof, only after the end of July does any significant event involving heroin occur at a time and place which is not also a key time and place for the alleged cocaine conspiracy. While the government did not present in the heroin conspiracy trial evidence of the cocaine negotiations at the Peachtree Plaza and did not present in the cocaine conspiracy trial evidence of Cole's dealings with Horace Jones to supply Turner with heroin, each of these events grew out of the core agreement between Cole and Marable to deal in drugs and the effort to provide Detective Turner with any narcotic requested. That some defendants dealt primarily with only a single drug does not establish the existence of separate conspiracies where an examination of the factors central to conspiracy shows a degree of coincidence as substantial as in the case at bar.

The evidence discloses that the unlawful agreement pursuant to which the conspira-

its on the legislative power to define offenses. However, once Congress has defined the allowable unit of prosecution, that prescription determines the scope of protection afforded by a prior conviction. *See United States v. Sanabria,* —— U.S. ——, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

tors acted was but a single agreement to deal in drugs. It cannot be separated into dual conspiracies under Section 846 to distribute cocaine and heroin without offending the Double Jeopardy Clause. When the events of the alleged heroin conspiracy are overlaid with those of the cocaine conspiracy, there emerges not two discrete patterns of activity but a single design with the events most important in each case appearing at crucial and common junctures. Cole's testimony as a government witness in the case at bar confirms this conclusion by describing his pact with Marable as an agreement to deal in drugs generally and not one limited to particular narcotics. Deleting all references to cocaine dealings from the heroin conspiracy trial would have left the government with a fragmented, nonsensical narrative.

We determine that the conspiracy charged in the case at bar is the same conspiracy for which Marable has already been convicted, and therefore we hold that the Double Jeopardy Clause bars this additional prosecution for this same offense. Accordingly, the judgment of the district court is

REVERSED.