UNITED STATES of America,
Plaintiff-Appellee,

v.

Reuben STURMAN, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Joe ZERNIC, Defendant-Appellant.

Nos. 81–5133, 81–5231.

United States Court of Appeals,
Eleventh Circuit.

June 28, 1982.

Arthur M. Schwartz, Denver, Colo., Bernard A. Berkman, Cleveland, Ohio, for Reuben Sturman.

Berkman, Gordon, Murray & Palda, Bernard A. Berkman, Cleveland, Ohio, for Joe Zernic.

John F. DePue, Washington, D. C., for the U. S.

Before VANCE, HATCHETT and ANDERSON, Circuit Judges.

VANCE, Circuit Judge:

Reuben Sturman and Joe Zernic appeal the district court's denial of their motion to dismiss a conspiracy indictment on double jeopardy grounds.[1] We affirm.

On October 15, 1980 a federal grand jury for the southern district of Florida returned a six count superseding indictment charging Sturman, Zernic, and two named codefendants with violating federal obscenity laws. The first count charged that the four defendants had conspired with each other and with certain unnamed persons to transport obscene material in interstate commerce and to use common carriers to ship the material to the southern district of Florida, all in violation of 18 U.S.C. § 371.[2] The conspiracy was alleged to have run from December 1, 1977 to June 5, 1978. The remaining five counts of the indictment alleged various instances of the use of common carriers to transport obscene material or the transportation of such matter in interstate commerce, in violation of 18 U.S.C. §§ 2, 1462.[3]

Appellants contend that the double jeopardy clause of the fifth amendment[4] bars

---

1. Although the district court's order denying the motion to dismiss the indictment on double jeopardy grounds is in fact an interlocutory order, it is treated as a final order for purposes of appellate jurisdiction. *Abney v. United States*, 431 U.S. 651, 659–62, 97 S.Ct. 2034, 2040–41, 52 L.Ed.2d 651 (1977); *United States v. Stricklin*, 591 F.2d 1112, 1117 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979). We therefore have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

2. 18 U.S.C. § 371 provides in relevant part:
   If two or more persons conspire either to commit any offense against the United States ... and one or more of such persons do any

act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. Appellants have conceded that they have never before been placed in jeopardy for these substantive counts, so the remaining five counts of the indictment are not relevant to this appeal.

4. The fifth amendment provides in relevant part:
   nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb ....
   U.S.Const., amend. V.

their prosecution under this indictment because they previously were charged with and placed on trial for the same alleged conspiracy. The prior proceedings upon which this double jeopardy claim is based began with appellants' indictment on March 15, 1976 in the northern district of Ohio. The Ohio indictment charged appellants and six named codefendants, including the Sovereign News Company, with conspiracy and twenty-eight counts of substantive violations of the federal obscenity laws.[5] As charged in Count 1 of the indictment, the conspiracy to violate the obscenity laws centered on the shipment of obscene materials by mail and common carrier through interstate commerce from Sovereign News in Cleveland, Ohio to the Webster Book Store in Fort Worth, Texas. The conspiracy was alleged to have operated between September 1973 and March 15, 1976.

Although all counts of the Ohio indictment involved shipments to the Webster Book Store in Fort Worth, the government's evidence at trial was much broader. It tended to show widespread distribution of obscene materials including in particular transmission of such materials to Majestic News in Pittsburgh, Pennsylvania. No evidence was introduced, however, to show shipments of obscene matter or conspiracy to ship obscene matter to Miami. Appellants were acquitted of the Ohio charges in July 1978.

Appellant Sturman was subsequently indicted for the same statutory offenses by a grand jury in the western district of Pennsylvania. Sturman and five codefendants were alleged to have conspired to distribute and to have distributed obscene materials under the aegis of the Sovereign News Company.[6] Sovereign News and the defendants allegedly conspired with the Pittsburgh based Majestic News Company to distribute obscene materials in Pennsylvania, Ohio, West Virginia, New York, and elsewhere, while the substantive offenses charged involved shipments to various points in West Virginia. On motion of

Sturman and one other defendant the conspiracy count of the Pennsylvania indictment was dismissed on double jeopardy grounds because of the substantial overlap between the charged conspiracy and the proof made in the earlier Ohio trial. *United States v. Kamins*, 479 F.Supp. 1374 (W.D.Pa.1979).

The original Florida indictment was returned on February 11, 1980. Count 1 charged appellants and forty-three codefendants with conspiring between July 1, 1977 and the date of the indictment to transport obscene materials in interstate commerce. The predicate overt acts alleged were shipments of obscene material to Miami, Florida from San Francisco and Los Angeles, California, as well as from Cleveland, Ohio. Count 5 of the indictment further charged appellants and two codefendants with various specific shipments of obscene material to Miami between December 6, 1977 and June 2, 1978. This original Florida indictment was dismissed on the government's motion on August 18, 1981. The grand jury subsequently charged the various defendants in sixteen separate indictments, one of which is the basis of this appeal.

Appellants moved to dismiss the conspiracy count of this indictment on double jeopardy grounds. They alleged that the charged conspiracy was in reality part of the larger nationwide conspiracy that had been the basis of the prior Ohio and Pennsylvania indictments. The district court denied the motion without holding an evidentiary hearing, and stated:

Upon examination of the facts alleged and evidence offered in the Ohio trial the Court finds that the present indictment deals with an entirely different set of facts and a completely distinct time frame. The present indictment is narrowly drawn to reach only a specific limited conspiracy to ship obscene material to Miami, Florida. Under no view of the facts could the defendant be said to be

---

**5.** The Ohio indictment charged defendants under 18 U.S.C. §§ 2, 371, 1461, 1462, 1465.

**6.** The Pennsylvania indictment charged defendants with violating 18 U.S.C. §§ 371, 1465.

put twice in jeopardy for the same offense.

On appeal Sturman and Zernic raise two issues. They contend first that they produced compelling proof of a double jeopardy violation and that the district court erred in not dismissing the conspiracy count. They further contend that the district court erroneously failed to hold an evidentiary hearing on their motions.

■ The double jeopardy clause of the fifth amendment guarantees that an individual will not be subjected to multiple prosecutions for the same offense. *Ashe v. Swenson*, 397 U.S. 436, 450, 90 S.Ct. 1189, 1197, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). The traditional test for determining whether two indictments charge the same offense is whether the same proof will sustain a conviction under both or whether one requires proof of facts not required by the other. *United States v. Tammaro*, 636 F.2d 100, 103 (5th Cir. 1981). A facial examination of appellants' claim demonstrates that it wholly fails to establish the same offense under this general test. The former fifth circuit has recognized, however, that "by the nature of the crime, the precise bounds of a single conspiracy seldom will be clear from the indictment alone." *United States v. Marable*, 578 F.2d 151, 153 (5th Cir. 1979). Accordingly, the court has required, in testing whether for double jeopardy purposes two conspiracies are in fact one, a more detailed examination of the record than normally occurs under the "same evidence" test. *Id.* The essence of this determination is, of course, whether there was more than one agreement to engage in unlawful activity. *United States v. Stricklin*, 591 F.2d 1112, 1125 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979). *See also Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942) (agreement constitutes conspiracy, not number of overt acts in furtherance of the agreement). The *Marable* court identified five factors of predominant importance in determining whether there was one agreement or more:

(1) time, (2) persons acting as coconspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place.

*United States v. Marable*, 578 F.2d at 154.

■ Applying these factors to this case, it is apparent that the Florida indictment alleges a separate conspiracy that is not barred by the double jeopardy clause. Only the third factor, identity of the statutory offenses charged, favors appellants. Both the Ohio indictment and the superseding Florida indictment charge violations of 18 U.S.C. § 371 in connection with violations of the federal obscenity laws.

The four remaining *Marable* factors, which are clearly more important to the double jeopardy analysis, point to the contrary conclusion that two distinct conspiracies were charged. The two indictments allege that the conspiratorial events occurred in separate places. The charges in the present indictment deal with specific shipments of pornographic material to Miami. Conversely, the Ohio indictment dealt with a pornography distribution ring of broad scale, but no evidence was introduced at the Ohio trial that even suggested a connection with Miami. Appellants concede that the overt acts charged here are dissimilar from those charged in the prior indictment, so the fourth *Marable* factor counts against their claim.[7] Additionally, there was no identity of coconspirators in the two indictments. Of the seven individuals indicted in Ohio, only two, Sturman and Zernic, were indicted in any of the sixteen superseding Florida indictments. Appellants argue that one of the two remaining defendants in this superseding indictment was an unnamed coconspirator in Ohio, but we think that the identity of unindicted persons is inconsequential for this double jeopardy analysis.

7. *See supra* note 3.

The most significant element of the *Marable* analysis under the present facts involves the dates of the two conspiracies. The alleged Ohio conspiracy only extended until March 15, 1976, while the conspiracy now charged is alleged to have begun on December 1, 1977. Appellants seek to paper over the twenty month gap by injecting the dismissed Pennsylvania indictment and the original Florida indictment into our examination. This argument cannot succeed, however, for the simple reason that appellants were not placed in jeopardy under the dismissed Pennsylvania indictment. *See Crist v. Bretz*, 437 U.S. 28, 37–38, 98 S.Ct. 2156, 2161–62, 57 L.Ed.2d 24 (1978); *United States v. Futch*, 637 F.2d 386, 389 (5th Cir. 1981). That indictment, therefore, is immaterial to the narrow double jeopardy issue that is before us: whether appellants are currently charged with the same conspiracy of which they were acquitted in the prior Ohio prosecution.[8]

We conclude that the application of the *Marable* test to this case points to the unmistakeable conclusion that the two conspiracies are separate and that the district court properly overruled the claim of double jeopardy. We note and expressly reject the argument implicit in appellants' contentions that once the government put on evidence at the prior trial showing an ongoing, open ended conspiracy of national scope, it would thereafter be barred from charging any future conspiracy. That would mean that following an acquittal such a defendant would be licensed to enter criminal conspiracies with impunity. Neither our authorities nor logic support such a suggestion in any way.[9]

Appellants argue alternatively that the district court should have held an evidentiary hearing before deciding their double jeopardy motion. They fail to suggest, however, anything that might have been accomplished by holding such a hearing. The district court had before it a complete transcript of the Ohio trial and a sufficient record of all other proceedings, so it is difficult to imagine what other relevant evidence could have been adduced at an evidentiary hearing. On this basis alone they have failed to demonstrate reversible error. More importantly, however, appellants have failed to meet their threshold burden:

It is undisputed that the burden of going forward by putting the double jeopardy claim in issue is and should be on the defendant. It is similarly reasonable to require the defendant to tender a prima facie nonfrivolous double jeopardy claim before the possibility of a shift of the burden of persuasion to the government comes into play.

*United States v. Stricklin*, 591 F.2d at 1117–18. Absent a proffer of evidence demonstrating a nonfrivolous double jeopardy claim there is no obligation to hold an evidentiary hearing pursuant to *Stricklin*. In this case appellants have failed to tender the requisite prima facie claim and the district court properly ruled on the motion on the basis of the extensive papers before it.

AFFIRMED.

HATCHETT, Circuit Judge, dissenting:

I respectfully dissent. The majority opinion states that "[a]bsent a proffer of evidence demonstrating a nonfrivolous double jeopardy claim there is no obligation to hold an evidentiary hearing pursuant to *Stricklin*." In *United States v. Stricklin*, 591 F.2d

---

8. Appellants also contend that the dismissal of the Pennsylvania indictment necessarily entailed the resolution of certain factual issues that should be binding upon the government according to principles of collateral estoppel. This court is without jurisdiction under 28 U.S.C. § 1291, however, to entertain this contention. *United States v. Tammaro*, 636 F.2d 100, 101 n.1 (5th Cir. 1981). *See Abney v. United States*, 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977).

9. Our result would be the same even if we were to construe the Florida conspiracy to be a continuation of the Ohio conspiracy. "Further operation of the 'old' conspiracy after being charged with that crime becomes a new offense for purposes of the double jeopardy claim." *United States v. Stricklin*, 591 F.2d 1112, 1121 n.2 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979).

1112, 1117 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979), the Fifth Circuit adopted the reasoning of *United States v. Inmon*, 568 F.2d 326 (3d Cir. 1977), in establishing procedural rules for a pretrial double jeopardy hearing with regard to evidentiary requirements such as the burdens of going forward and persuasion. In requiring the defendant to meet its burden of going forward by tendering a prima facie nonfrivolous double jeopardy claim, the *Stricklin* court assumed that the defendant would make this showing at the pretrial double jeopardy hearing. The court did not require that such a showing be made as a prerequisite to holding a hearing. Nor does *Stricklin* require, as the majority opinion posits, that the defendant state what "might [be] accomplished by holding such a hearing." On the contrary, the *Inmon* court stated that "there *must* be a pretrial proceeding in which an appropriate record may be made to test a double jeopardy claim . . . ." *Inmon*, 568 F.2d at 329 (emphasis added).

The district court in the instant case erred in neglecting to conduct a pretrial evidentiary proceeding in which a record could have been made to test the double jeopardy claim. Since a question exists of factual manipulation by the government in defining the conspiracy charged, the failure to conduct the hearing is critical. Similarly, the *Stricklin* court evinced a concern for this problem, as it stated:

> The government is clearly in a better position to show that the crime charged in the present indictment is not the same as the one charged in the previous indictment than the defendant is to show that the crimes are the same . . . . Since the government controls the particularity of an indictment, it should bear the responsibility for any ambiguities resulting in its vagueness that are left unresolved by a bill of particulars.

*Stricklin*, 591 F.2d at 1118–19.

I also disagree with the conclusion that, since appellants were not placed in jeopardy under the Pennsylvania indictment, that indictment is irrelevant in determining whether appellants are currently charged with the same conspiracy of which they were acquitted in the prior Ohio prosecution. The finding that the Pennsylvania conspiracy was subsumed by the conspiracy charged in the earlier Ohio indictment compels the conclusion that the Ohio conspiracy continued through the time alleged in the Pennsylvania indictment.

I therefore would reverse and remand with instructions to conduct the requisite evidentiary hearing, which also would clarify these questions.