930 F.2d 913
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alejuandro CABRERA, a/k/a Alex, Defendant-Appellant.
 No. 90-5608.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1990.
Decided April 18, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Rock Hill. Clyde H. Hamilton, District Judge. (CR-89-214)
 Russell White Templeton, Columbia, S.C., for appellant.
 Alfred W.W. Bethea, Assistant United States Attorney, Columbia, S.C., (Argued), for appellee; E. Bart Daniel, United States Attorney, Columbia, S.C., on brief.
 D.S.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, BUTZNER, Senior Circuit Judge, and CHARLES H. HADEN, III, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal raises the question of whether a guilty plea to a one-day conspiracy to distribute cocaine in one state creates a double jeopardy bar to prosecution for a contemporaneous two-year conspiracy to distribute cocaine in another state. We find that it does not where, as here, there were two separate conspiracies involving separate agreements.
 
 I.
 
 2
 On November 6, 1988, Alejuandro Cabrera and Elmer Franklin Summers were arrested while retrieving a piece of luggage from baggage claim at the Charlotte, North Carolina airport. An airline employee had discovered cocaine in the luggage and had notified the State Bureau of Investigation. The next day, Cabrera was indicted by the Federal Grand Jury for the Western District of North Carolina on a three-count indictment alleging violations of 21 U.S.C. Secs. 841(a)(1) and 846 that occurred on November 6, 1988 (N.C. Indictment). Cabrera subsequently pled guilty to Count One of this indictment, which charged him with conspiracy to unlawfully possess cocaine with intent to distribute. As part of his plea agreement, Cabrera agreed to testify truthfully against his co-conspirator Summers if Summers should seek a jury trial. Ultimately Cabrera did testify against Summers. The district court adopted Cabrera's testimony against Summers as the factual basis for Cabrera's guilty plea to Count One of the North Carolina Indictment, and for sentencing purposes.
 
 
 3
 Over a year later, in the summer of 1989, Cabrera was arrested in South Carolina on suspicion of drug trafficking activities. On August 16, 1989, a grand jury of the District of South Carolina at Rock Hill returned a one-count indictment charging Cabrera with conspiracy to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. Sec. 841 (S.C. Indictment). The time period alleged in the indictment began with an unspecified date in the spring of 1987 and continued until August 16, 1989, a period of over two years. In addition to Cabrera, the S.C. Indictment named nine co-conspirators, none of whom were indicted in the North Carolina incident.
 
 
 4
 Cabrera petitioned the South Carolina district court to dismiss the S.C. Indictment on the ground that his guilty plea in North Carolina created a double jeopardy bar to prosecution on the S.C.Indictment because the conspiracy charged in both indictments is the same conspiracy. The district court denied Cabrera's motion. This appeal followed.
 
 II.
 
 5
 The Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The double jeopardy clause protects defendants against cumulative punishments and successive prosecutions for the same offense. United States v. Ragins, 840 F.2d 1184, 1188 (4th Cir.1988). As is the case with all matters which raise constitutional issues, we review the district court's determination of whether Cabrera was exposed to double jeopardy de novo. Bose Corp. v. Consumers Union of the United States, Inc., 466 U.S. 485 (1983).
 
 
 6
 Because the essential element defining the crime of conspiracy is an "agreement," it is ordinarily difficult to determine the extent and scope of the alleged wrongdoing. Braverman v. United States, 317 U.S. 49, 53 (1942). As a result, where an alleged conspiracy may reflect more than one agreement, courts have wrestled with the problem of delineating the previous offense which might place the defendant in jeopardy. This court has observed that, when a double jeopardy claim is raised before the second trial commences, the defendant is at a serious disadvantage in attempting to prove that the successive offenses charged to him are part of a single conspiracy. Ragins, supra, 840 F.2d at 1191. Therefore, the burden of proof is on the government to establish, by a preponderance of the evidence, that there were two separate offenses. Id. at 1192.
 
 
 7
 As a general rule, when conspiracy is not involved "the second prosecution is barred by double jeopardy if the evidence actually used to prosecute the first offense would suffice to convict of the second offense as charged." Ragins, supra, 840 F.2d at 1192; see also Jordan v. Virginia, 653 F.2d 870, 873 (4th Cir.1980); Blockburger v. United States, 284 U.S. 299, 304 (1932). However, acknowledging the need for a more flexible test given the peculiar characteristics of the offense of conspiracy, we have joined other jurisdictions in adopting a five-part "totality of the circumstances" test for assessing the validity of a double jeopardy claim involving conspiracies. Ragins, supra, 840 F.2d at 1189; see also United States v. Thomas, 759 F.2d 659, 662 (8th Cir.1985); United States v. Sinito, 723 F.2d 1250, 1256 (6th Cir.1983), cert. denied, 469 U.S. 1817 (1984); United States v. Marable, 578 F.2d 151, 154 (5th Cir.1978). The Ragins test requires consideration of the following factors: 1) the time periods covered by the alleged conspiracies; 2) the places where the conspiracies are alleged to have occurred; 3) the persons charged as co-conspirators; 4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and 5) the substantive statutes alleged to have been violated. Id.
 
 
 8
 The district court in this case found that the government had met its burden of proving by a preponderance of the evidence that two separate conspiracies existed. Applying the Ragins factors, the court determined the following:
 
 
 9
 1) The N.C. Indictment involved a one-time transaction on November 6, 1988, while the S.C. Indictment concerned an ongoing agreement to distribute cocaine over a two-year period;
 
 
 10
 2) The distribution objectives of the respective indictments involved different locations. The N.C. Indictment is expressed in terms of intent to distribute in the Western District of North Carolina, while the S.C. Indictment places no limitation on the situs of distribution;
 
 
 11
 3) With the exception of Cabrera, the respective indictments allege two different sets of conspirators;
 
 
 12
 4) Numerous overt acts performed to effectuate the South Carolina conspiracy were distinct from the acts pertinent to Cabrera's arrest in North Carolina.
 
 
 13
 The district court relied on these factors,[1] together with Cabrera's testimony at Summers' trial, to find that two distinct conspiracies existed. Cabrera testified that the transaction of November 6, 1988 was his only involvement with drugs, and that he didn't know about other drug transactions involving other coconspirators named in the S.C. Indictment (two of whom Cabrera had met in 1988 before his arrest in Charlotte). The court below stated that Cabrera's guilty plea to Count One of the N.C. Indictment effectively limits the scope of the previous conspiracy to the "specified offense" as defined by the factual basis for the plea. See United States v. Broce, 488 U.S. 563 (1989) (having pled guilty to two conspiracy indictments, defendants subsequently moved to vacate the conviction under second indictment on grounds of double jeopardy; Court held challenge was foreclosed by the guilty pleas and convictions).
 
 
 14
 We think that the involvement of two separate sets of conspirators, in particular, supports the conclusion that there were two separate agreements, each involving a different group of conspirators. The Supreme Court has stated that "the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects.... [I]t is ... that agreement which constitutes the conspiracy which the statute punishes." Braverman v. United States, supra, 317 U.S. at 53 (emphasis added). The Model Penal Code bases its determination of whether only one conspiracy exists on whether the multiple crimes are the object of the same agreement or continuous conspiratorial relationship. Model Penal Code Sec. 5.03(3), Comment (1985). To the extent that there was no overlap in personnel involved in the North Carolina and South Carolina incidents, one may reasonably infer that there was no continuous conspiratorial relationship, and that the incidents were acts resulting from different agreements rather than simply two overt acts in furtherance of one large conspiracy.
 
 
 15
 We find no error in the district court's determination that Cabrera's prosecution on the South Carolina conspiracy did not subject him to double jeopardy with regard to his prosecution in North Carolina. The district court's judgment is therefore
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The district court found that the fifth Ragins factor did not act to differentiate the two conspiracies, since both indictments charged violations of the same substantive statutes. However, this fact does not prevent the government from establishing the existence of separate conspiracies. United States v. MacDougall, 790 F.2d 1135, 1147 (4th Cir.1986). In MacDougall, we advocated a flexible application of the five-factor test in preference to rigid adherence, and we upheld the district court's finding that two separate conspiracies existed on the strength of only three of these factors