IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2005

## STATE OF TENNESSEE v. MICHAEL BURNETTE

**Appeal from the Criminal Court for Roane County**
**No. 12668     E. Eugene Eblen, Judge**

---

**No. E2005-00002-CCA-R3-CD - Filed March 22, 2006**

---

The Appellant, Michael Burnette, was convicted by a Roane County jury of aggravated robbery and sentenced to ten years in the Department of Correction. On appeal, Burnette raises two issues for our review: (1) whether the evidence is sufficient to support the conviction; and (2) whether his sentence is excessive. After review, the judgment of conviction and resulting sentence are affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Steve McEwen (on appeal), Mountain City, Tennessee; and Charles B. Hill, II (at trial), Kingston, Tennessee, for the Appellant, Michael Burnette.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; J. Scott McCluen, District Attorney General; and D. Roger Delp, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

At approximately 6:30 a.m. on the morning of March 31, 2002, the Appellant entered the residence of Gwendolyn Anders in Rockwood armed with a knife. Present in the home at the time were Anders, her twenty-three-year-old daughter Danielle Anders, her eighteen-year-old grandson Keith Montel Wright, her thirteen-year-old granddaughter Chastity McCray, and her thirteen-year-old niece Twaneeka Chatman. Danielle Anders was awakened when the Appellant opened the door to the bedroom where she was sleeping. The Appellant then ordered her not to look at him and, while holding a knife to her face, ordered her to give him money. The Appellant told her that no one would get hurt if she gave him the money but that if she did not, he would "start taking everybody out one by one." He then proceeded to cut the phone cords and break the cell phones by throwing

them on the hardwood floor. Danielle told the Appellant that she did not have any cash but gave him her bank card and "told him what the code was."

The Appellant then led Danielle into the room where Montel was sleeping. After waking Montel, the Appellant demanded money from him. The Appellant, still armed with the pocket knife, told Montel not to look at him. He then "tied up" Montel with a severed phone cord and covered his head with a blanket. After Montel informed the Appellant that he had no money, the Appellant left the room. Next, the Appellant led Danielle into the living room where Chastity and Twaneeka were asleep on the couch. The Appellant again demanded money and stated he would kill the girls if they looked at him. Chastity gave the Appellant a five-dollar bill. He then proceeded to "tie up" both girls and cover their heads with blankets.

Danielle then proceeded, as instructed by the Appellant, to enter her mother's room and awaken Ms. Anders. While Danielle explained to her mother what was going on, the Appellant entered the room and directed Ms. Anders not to look at him. He then demanded money from Ms. Anders and threatened to harm everyone present if no money was produced. Ms. Anders told the Appellant where her "bag" was, but, as he began "shaking the bag out," the Appellant noticed that Montel had managed to free himself from his bindings and was standing in the hall. The Appellant then proceeded toward Montel, who ran from the house. During the commotion, Danielle pushed the "panic button" on an alarm system inside the home. Montel ran across the street and alerted a neighbor who called 911. During the turmoil, the Appellant disappeared.

When police arrived, each of the victims gave a description of the intruder, noting that he had a scar or scratch under his eye. Police, suspecting the Appellant based upon the victims' descriptions, compiled a photo line-up. Each victim viewed the composite photographs and identified the Appellant as the person who had entered the home. Additionally, the police recovered a twenty-ounce Sprite bottle which was discovered on Ms. Anders' front porch. The bottle was later tested for fingerprints, and a latent print was removed, which matched the Appellant's left thumb print.

On June 17, 2002, a Roane County grand jury returned a one-count indictment against the Appellant charging him with aggravated robbery. Following a jury trial, the Appellant was found guilty as charged. After a sentencing hearing, the trial court sentenced the Appellant to a term of ten years in the Department of Correction. The trial court subsequently denied the Appellant's motion for new trial, with this appeal following.

## Analysis

On appeal, the Appellant has raised two issues for our review: (1) whether the evidence is sufficient to support the conviction; and (2) whether his ten-year sentence is excessive. Although not raised as error on appeal, we find it necessary to first address the indictment returned in this case. The single-count indictment charged, in pertinent part, as follows:

. . . that [the Appellant], on or about March 31, 2002, . . . did and intentionally obtain property, to-wit: United States Currency and a debit card of Daneila Anders, Gwen Anders, Keith Martel Wright, Twanika Chatman, Chassidy Cierra McCray by violence or putting the said persons in fear, and accomplished with a deadly weapon, to-wit: a knife with the intent to deprive the said Daneila Anders, Gwen Anders, Keith Martel Wright, Twanika Chatman, Chassidy Cierra McCray of such property, in violation of T.C.A. Section 39-13-402 and against the peace and dignity of the State of Tennessee.[1]

While the indictment charges the Appellant with only one count of aggravated robbery, both the indictment on its face and the evidence presented at trial demonstrate the occurrence of more than one distinct criminal act. As established by the proof at trial, the single-count indictment encompasses five distinct and separate crimes committed by the Appellant on March 31, 2003, those being two aggravated robberies and three attempted aggravated robberies.

An indictment or presentment charging two or more separate and distinct offenses in the same count, or offenses the punishment of each of which is different, is bad for duplicity. *Griffin v. State*, 70 S.W. 61, 62 (Tenn. 1902); *Forrest v. State*, 81 Tenn. 103 (1884). It is impermissible to charge two or more distinct and separate offenses in a single-count indictment. *State v. Angela E. Isabell*, No. M2002-00584-CCA-R3-CD (Tenn. Crim. App. at Nashville, June 27, 2003) (citing *State v. Jefferson*, 529 S.W.2d 674, 678 (Tenn. 1975)). In other words, "all crimes arising from the same incident that are not lesser included offenses of another crime charged in the indictment must be charged in separate counts."[2] *State v. Gilliam*, 901 S.W.2d 385, 389 (Tenn. Crim. App. 1995).

The vices of duplicity arise from a breach of the defendant's Sixth Amendment right to know the charges that he or she faces. A conviction on a duplicitous count could be obtained without a unanimous verdict as to each of the offenses contained in the count. Furthermore, a duplicitous indictment could eviscerate the defendant's Fifth Amendment protection against double jeopardy, due to a lack of clarity concerning the offense with which he or she is charged or convicted.

41 AM. JUR. 2D § 213, *Indictments and Informations* (1995). Thus, the purpose behind the prohibition of a duplicitous indictment is the avoidance of the following dangers: (1) failure to give the defendant adequate notice of the charges against him; (2) exposure of the defendant to the

---

[1] Notwithstanding a different name or spelling in the indictment, we have used the spellings of the witnesses' names as provided by the respective witness during his or her testimony at trial. As is our policy, however, we utilize the name of the Appellant, Michael Burnette, as contained in the indictment.

[2] Charges are not duplicitous if each count alleges a single incident or offense or if the acts charged constitute a single or continuous ongoing crime. Moreover, alternate means of committing an offense may be alleged in the same count of an indictment. T.C.A. § 40-13-206(a) (2003).

possibility of double jeopardy; and (3) conviction of the defendant by less than a unanimous jury verdict.

The rules, however, involving prohibition against duplicity are rules of pleading which go to the manner in which charges are to be joined or separated. 1 CHARLES A. WRIGHT et al., FEDERAL PRACTICE AND PROCEDURE § 142, 469 (2d. ed. 1982). As such, by proceeding to trial without objection, the defendant waives all challenges to the validity of the indictment. *State v. Davis*, 613 S.W.2d 218, 221 (Tenn. 1981); *Scruggs v. State*, 66 Tenn. 37, 38 (1872); *State v. Cleo Henderson*, No. 02C01-9709-CR-00356 (Tenn. Crim. App. at Jackson, Feb. 23, 1999); *State v. Donald Richardson*, No. 87-192-III (Tenn. Crim. App. at Nashville, May 24, 1988); *see also* Tenn. R. Crim. P. 12(b)(2). Thus, our analysis of the issue is waived. *See* Tenn. R. App. P. 13(b). Nevertheless, review of this issue is permitted if plain error exists. Rule 52(b) of the Tennessee Rules of Criminal Procedure provides that "[a]n error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." Because fundamental constitutional rights of the Appellant are affected, we elect plain error review. *See State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000). Accordingly, we review the indictment under the three purposes and safeguards of the duplicity requirement, those being: (1) adequate notice; (2) double jeopardy; and (3) unanimity of the jury verdict. We note that failure to properly plead is not per se fatal to an indictment or information, and dismissal is not required unless the defendant has actually suffered prejudice.

**(1) Adequate Notice**

The indictment in this case charged the Appellant with aggravated robbery and set forth the date of the offense and the names of five victims of the crime. The Appellant could not have construed this indictment to charge any other alleged offense, date, or victim. Thus, we conclude that the Appellant received adequate notice of the charge against him.

**(2) Double Jeopardy**

The double jeopardy clauses of both the United States and the Tennessee Constitutions protect against being put in jeopardy twice for the same offense. U.S. CONST. amend. V; TENN. CONST. art. I, § 10. The double jeopardy clause provides protection against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after a conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969); *State v. Beauregard*, 32 S.W.3d 681, 682 (Tenn. 2000). Double jeopardy bars a second prosecution if the evidence necessary to support a second conviction was admissible and would have supported a conviction in the first prosecution. *United States v. Marable*, 578 F.2d 151, 153 (5th Cir. 1978). Here the specific acts of the Appellant, as alleged in the indictment, were introduced into evidence at trial. Moreover, exposure to double jeopardy is somewhat lessened in this state by Tenn. R. Crim. P. 8(a), which provides that "[t]wo or more offenses shall be joined in the same indictment . . . if the offenses are based upon the same conduct

-4-

or arise from the same criminal episode and if such offenses are known to the appropriate prosecuting official at the time of the return of the indictment . . . ." Thus, the Appellant has not been prejudiced on double jeopardy grounds.

### (3) Unanimity of Jury Verdict

There is a fundamental constitutional right under Tennessee law to a unanimous verdict before a conviction for a criminal offense may be imposed. *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. Crim. App. 1993); *State v. Brown*, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991). A jury's verdict is not unanimous when the jurors find the same elements of a particular crime based on different facts and offenses; the jurors must "deliberate and render a verdict based on the same evidence." *State v. Johnson*, 53 S.W.3d 628, 631 (Tenn. 2001). Issues of jury unanimity can arise, as here, when a single offense is charged, but there is evidence presented of different acts with each act being sufficient to support a conviction for the charged offense. The doctrine is applied to ensure that some jurors do not convict on one offense and other jurors on another, *i.e.* a patchwork verdict. *Shelton*, 851 S.W.2d at 137. Thus, the issue remaining for our consideration is whether the jury's verdict was unanimous given the possibility that all of the jurors might agree that an aggravated robbery occurred in the case without unanimously agreeing upon the specific act or victim which constituted the crime.[3]

After review, we conclude that no prejudice is shown. Although the Appellant did not testify at trial or present any defense proof, the record demonstrates that he defended upon grounds that he was not the perpetrator of the crime and that he was misidentified by the various witnesses. Thus, the issue before the jury was the credibility of the four witnesses who identified the Appellant as the perpetrator of the crime, with each offering consistent versions of the event. Only if the jury found the witnesses to be credible could they have returned a verdict of guilty of aggravated robbery. Here the acts occurred over a relatively short period of time and during a single criminal episode. Accordingly, we conclude that the right of a unanimous jury verdict was not compromised. However, our conclusion of no prejudice should in no way be construed as an endorsement for duplicitous indictments.

## I. Sufficiency of the Evidence

The Appellant asserts that the evidence presented was legally insufficient to support his conviction for aggravated robbery. Specifically, he asserts that his identity as the perpetrator was not sufficiently established and that the State failed to prove that the perpetrator utilized a deadly weapon or displayed an article fashioned to lead the victims to reasonably believe it was a deadly weapon.

---

[3]We note that the issue of lack of a unanimous jury verdict could have been averted by requiring the State to make an election at the close of proof with regard to which specific crime it sought to convict upon. *See Johnson*, 53 S.W.3d at 631.

In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The Appellant was convicted of aggravated robbery in violation of Tennessee Code Annotated section 39-13-402(a)(1) (2003). As indicted, aggravated robbery is defined as robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. T.C.A. § 39-13-402(a)(1). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (2003).

It is fundamental that the identity of the perpetrator is an essential element of any crime, *see State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975), and, therefore, must be proven beyond a reasonable doubt. After review, we conclude that there is more than sufficient evidence to establish that the Appellant did in fact commit the aggravated robbery.

The Appellant's argument regarding the failure to establish his identity is premised upon his assertion that none of the named victims in the indictment had previously seen the Appellant, that the intruder was wearing a toboggan which covered his hair, that the intruder was in the home only a short time, and that the incident occurred during the early morning hours when no lights were on in the house. Additionally, the Appellant relies upon the prosecution witnesses' varied testimony regarding the scar or scratch under his eye, with some witnesses testifying that it was under the right eye, while others testified it was under the left eye. We do not find the Appellant's arguments persuasive.

Each of the witnesses positively identified the Appellant from a pre-trial photo line-up, and four of the witnesses testifying at trial again made a positive identification of the Appellant.

Furthermore, a latent print found on a Sprite bottle discovered at the scene matched the Appellant's fingerprint. With regard to the Appellant's argument of inconsistent identifications, this court has held that the credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Moreover, inconsistency, inaccuracy, and omissions in the description of a defendant by a witness who is otherwise able to positively identify the defendant are questions for the jury to consider in determining the weight to be given the identification testimony. *State v. Radley*, 295 S.W.3d 532, 537 (Tenn. Crim. App. 1999).

Additionally, the Appellant asserts that the State failed to prove that the Appellant utilized a deadly weapon or displayed any article fashioned to lead the victims to reasonably believe it to be a deadly weapon. The Appellant bases his argument on the fact that the witnesses gave varying testimony regarding the size of the knife, with Montel describing it as "little bitty" and Chastity describing it as a "good-sized" knife. This argument is clearly misplaced. Regardless of the size of the knife, clearly it was used in a manner to frighten to the victims. The Appellant repeatedly threatened to kill the victims with the knife if they did not cooperate with him.

Upon review, we conclude that the evidence is more than sufficient to support the conviction. Witnesses positively identified the Appellant as the person who entered the home, armed with a knife, and threatened to "take them out one by one" if they did not give him money. The evidence clearly established that the Appellant bound the victims and took a debit card from one victim and $5 from another victim. Each of the prosecuting witnesses testified that he or she was frightened by the Appellant's actions. This proof is legally sufficient to support the Appellant's conviction for aggravated robbery. This issue is without merit.

## II. Sentencing

Next, the Appellant asserts that the ten-year Department of Correction sentence imposed by the trial court is excessive. Specifically, he asserts that the court failed to "appropriately render the necessary findings of fact when enhancing the [A]ppellant's sentence" and that he is entitled to the presumptive minimum sentence of eight years. Further, while acknowledging our supreme court's decision in *State v. Gomez*, 163 S.W.3d 632 (Tenn. 2005), the Appellant asserts that the trial court violated *Blakely v. Washington* by enhancing the sentence.

When an accused challenges the length, range, or manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and

characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); *Ashby*, 823 S.W.2d at 168. Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000). Additionally, the burden is on the Appellant to show the impropriety of the sentence. T.C.A. § 40-35-401, Sentencing Commission Comments.

If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, where the trial court fails to comply with the statutory provisions of sentencing, appellate review is *de novo* without a presumption of correctness.

The Appellant was convicted of aggravated robbery, a Class B felony, for which the appropriate sentence range is eight to twelve years. T.C.A. § 40-35-112(a)(2) (2003). The presumptive sentence to be imposed by the trial court for a Class B felony is the minimum sentence within the applicable range unless there are enhancement or mitigating factors present. T.C.A. § 40-35-210(c). The weight given to each factor is left to the discretion of the trial judge. *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In imposing a sentence of ten years, the trial court stated:

> Well under all the circumstances, and his past record, which is not that much at this point, although he has the charges pending, he is not at this point convicted of those. So they would not carry that much weight at this sentencing. So he would not be at maximum for sentence. I think the medium range would probably fit. So I sentence him to 10 years as a Range One Standard Offender.

It is apparent from the record that the trial court applied enhancement factor (2), that the Appellant had a previous history of criminal convictions or criminal behavior. *See* T.C.A. § 40-35-114(2) (2003). It was within the discretion of the trial court to determine the appropriate weight to be given the factor being applied. We find nothing in the record to preponderate against the trial court's determination. The pre-sentence report reflects that the Appellant had one prior conviction for vandalism, and there is certainly no prohibition against using a prior misdemeanor conviction to enhance a sentence. Thus, upon *de novo* review, we conclude that a sentence of ten years is justified in this case and adequately supported by the record.

Additionally, we conclude that the Appellant's *Blakely* argument is entirely misplaced. Our supreme court, in *Gomez*, held that the Tennessee Sentencing Reform Act does not violate the Sixth Amendment guarantee of a jury trial and is, thus, not affected by the *Blakely* decision. *Gomez*, 163

S.W.2d at 661. Clearly, we are bound by the decisions of the Tennessee Supreme Court. Moreover, as the State correctly argues, *Blakely* is not implicated on the facts of this case. The Appellant's sentence was enhanced based upon his prior criminal conviction, which is permitted by *Blakely*. *Blakely v. Washington*, 542 U.S. 296, 302, 124 S. Ct. 2531, 2536 (2004). This issue is without merit.

## CONCLUSION

Based upon the foregoing, the Appellant's conviction for aggravated robbery and resulting ten-year sentence are affirmed.

_____
DAVID G. HAYES, JUDGE